The Chancellor.
The complainant, who was a considerable land holder in the counties of Monmouth aud Middlesex, became embarrassed, and bis property was sold under executions issued from the courts of law and from this court. One farm, located at Middletown, was purchased at a master’s sale, in sighteen hundred and thirty-five, by Mr. Croes, who has since sold it for the price he paid for it, to the defendant. Prior to this the defendant had purchased, himself, three tracts of woodland belonging to the complainant, at a sheriff’s sale. The allega tion is, that all this property was purchased on behalf of the iomplainant, and with the undestanding that he might redeem *312 it by paying what it cost the purchasers. There is a wide difference in the position of the case, as to the farm purchased by Croes, and the wood lots purchased by the defendant himself. The sales were made at different times, and by different officers, and there are facts connected with the one which do not at all belong to the other. As to the farm sold to Mi*. Croes, there is no difficulty in arriving at the character of the sale. Mr. Croes having conveyed the property without covenants as to the title, is a competent, and certainly every way a reliable witness, and he states frankly that his object in buying the property was to befriend the complainant. The right to redeem was clearly agreed to. The plan was to sell off the wood and pay in that way, as far as it would go, aud then the complainant was to pay off the balance, compensate Mr. Croes for his trouble, aud take the land back. Trusting, as men are apt to do, in their transactions with one another, that each will perform his part faithfully, there was no time fixed when this redemption should take place, or in what manner the business should be accomplished. This answered very we! for the complainant, but having paid his money, it became irksome to Mr. Croes, and worked towards him a positive injury. The course pursued by the parties since the purchase, has, I think, completely absolved Mr. Croes from all obligation in law or equity to convey any of the property purchased by him, back to the complainant. The sale to Croes was in December, eighteen hundred and thirty-five ; he bought not only this farm, but other tracts, to the amount in all, of four thousand two hundred and forty dollars. The other tracts Croes gave a high price for, but this farm was sold low; the agreement was that the complainant might redeem the whole, but he passes by the other lands, and -seeks to redeem this farm alone. If there was no other objection, this would be enough. He cannot, under any circumstances, be allowed to redeem a part, without the whole.
The complainant has behaved vexatiously to Croes in this business; he came into it to help the complainant, and to save his property for him, but he gave him in the first instance a *313 wrong impression as to the property, leading him to believe a large tract of valuable woodland was included in it, which turned out not to be so, and afterwards kept him out of possession. In February, eighteen hundred and thirty-six, however, the complainant executed a paper to Mr. Croes, which puts an end to the whole contract for redemption. That paper declares the complainant thereafter to be only the agent of Croes in the said lands, and covenants to abandon all possession or right to possession in them. lie also agrees to pay rent for the land he occupies himself, and directs his tenant on the Middletown farm (the one now in question) to consider Croes as the landlord, and yield to him the possession. After this the complainant still paid no rent, but refused to give up possession, and Croes brought suits against him, and then for the sake of peace let him remain in possession another year, upon an agreement that he might redeem it at any time within that year. He did not redeem it within this time, and Croes had finally to go with the slier ifis of Middlesex and Monmouth, (for the property lay in two counties,) and with other force, to obtain possession, and gave him fifty dollars to give it up peaceably, which he did. After all this, there is no pretence, in my opinion, on the part of the complainant, for any further right to redeem this property. He has yielded all his right, and should remain satisfied. The evidence attempting to show fraud or any misunderstanding on the part of the complainant as to this paper, is entirely unsatisfactory.
It appears further, that Croes was anxious the complainant should take the property at any time, but he never would. He had a hard bargain of it, and has received nothing in return for his kindness but trouble and vexation.
As to the wood lots, whatever might have been the original design of the defendant, the weight of evidence is clearly in favor of the complainant’s right of redemption. The lots sold low, and others did not bid because it was understood they were sold for complainant’s benefit. The evidence is sufficient to establish this point, without relying upon the witnesses whose *314 competency is brought in question; and it would be useless,.herefore to settle that point.
"William Hawkins, "William Combs, Cornelius Boiee and Kobert Mathews, all prove sufficient for this purpose, and even John M. Perrin e, the. sheriff who sold the property, andNichoas M. Disbrow, the crier at the vendue, both say, it was theiz .mpression from what they saw and heard at the sale, that the defendant bought for the complainant.
This whole business seems to have been managed in a careless manner, and just so as to place the advantage on the side of the complainant. It is sufficient for the present purpose, however, to be satisfied, that the right of redemption of the three wood lots referred to in the bill, is with the complainant, and that he is entitled, from the evidence, to be restored to bis land upon paying what shall be found due, if any thing, on settlement of accounts between him and the defendant.
From some expressions which fell from the witnesses, it would seem, that the redemption was to take place upon the defendant being paid the whole that complainant owed him, whether particularly relating to this land or not. He stepped in as his friend and bought his property, with the promise that, when he was made whole for whatever complainant owed him, he should have his land again. The defendant will also be entitled to a fair compensation for his time, trouble and expenses bestowed on this business. This is no more than is just and proper under the circumstances.
So far as relates to the arbitration which has taken place between these parties, it can pass for nothing, in the view which I take of this case. In that arbitration the Middletown farm was embraced, and quite probably, as suggested in the argument, from a desire on the part of the defendant to do almost any thing to get through with this tedious and unpleasant controversy, My own opinion is, that as the arbitrators wez’e not sworn, the whole proceeding is void.
The injunction, therefore, having relation only to the ejectment brought by the defendant to recover possession of the Mid *315 dletown farm, was rightly dissolved, and that order must be confirmed. The usual reference, upon the other part of the case, must be made to a master, to state an account between the parties, in conformity with the views expressed in this, opinion.
Eeference to a master.
Cited in Inlsee v. Flagg, 2 Dutch. 371, 373; Marlatt v. Warwick, 3 C. E. Gr. 109; Hogan v. Jaques, 4 C. E. Gr. 127; Marlatt v. Warwick, Id. 446, Walker v. Hill’s Ex. 6 C. E. Gr. 201; Merritt v. Brown, Id. 404; Dodd v. Wakeman, 11 C. E. Gr. 485; Wakeman v. Dodd, 12 C. E. Gr. 565.